John PATMON, Plaintiff-Appellant,

v.

VAN DORN COMPANY, PLASTIC MACHINERY DIVISION, a corporation, et al., Defendants-Appellees.

No. 73–2021.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1974.

Decided May 31, 1974.

Michael I. Greenwald, Cleveland, Ohio, for plaintiff-appellant, John Patmon; N. D. Rollins, Rollins & Mosesson, Cleveland, Ohio, on brief.

Robert L. Larson, Joseph S. Ruggie, Jr., Thompson, Hine & Flory, Cleveland, Ohio, on brief, for Van Dorn Co.

Robert M. Phillips, Cleveland, Ohio, on brief, for Local 346 UAW and UAW International.

Before WEICK, EDWARDS and CELEBREZZE, Circuit Judges.

PER CURIAM.

Appellant Patmon filed suit in the District Court for damages and equitable relief against his employer, Van Dorn Company (Van Dorn), Local 346 UAW and the International Union, alleging that Van Dorn discriminated against appellant on account of his race (Negro) by refusing to promote him to the job of maintenance electrician, in violation of 42 U.S.C. §§ 1981, 1985 and 2000e, and alleging that the Unions failed and neglected to fairly represent him in prosecuting a grievance against his employer and conspired with his employer to deny his promotion.

Van Dorn and the unions filed motions for summary judgment and in support thereof submitted answers to interrogatories, affidavits, the deposition of Patmon, and exhibits attached thereto. The District Court, in a memorandum opinion and order, found that there was no genuine issue of fact on the proposition that Patmon did not possess the requisite qualifications for the position he was seeking, and granted the motions for summary judgment. Patmon appealed. We affirm.

Patmon was employed by Van Dorn as a pipe fitter in 1965 at $2.71 per hour. His compensation increased each year thereafter, and on September 13, 1972 he was earning $4.68 per hour.

Pursuant to the provisions of a collective bargaining agreement entered into between Van Dorn and Local 346, employees were permitted to bid on openings occurring in other jobs. Patmon did bid at different times for the job of maintenance electrician, but his bids were rejected by his employer on the ground that he did not possess the requisite qualifications for the job. The qualifications for the job of maintenance electrician were described by Van Dorn's Personnel Director in his affidavit, as follows:

For an employee to be awarded a job as maintenance electrician, he must demonstrate his ability to perform the work by prior experience as

a maintenance electrician, either at Van Dorn or with a prior employer; or by providing certification of educational training as a maintenace electrician.

The Personnel Director further stated that without such knowledge "an employee would be unable to perform the work, or would perform it in a manner which would result in extreme danger of personal injury or death to the employee performing the work, fellow employees, or other persons."

Before his employment by Van Dorn Patmon had a number of odd jobs, including part time work in wiring houses. He did not possess a license to perform such work nor did he have a maintenance electrician's license from a municipality. At no time did he demonstrate his ability to perform the job by prior experience as a maintenance electrician either at Van Dorn or with any other employer, nor did he furnish a certificate of educational training as a maintenance electrician.

■ Patmon did file an affidavit in which he stated that it is his opinion that he is a qualified electrician despite the fact that he was employed as a fitter by Van Dorn. He admitted that he holds no electrical contractor's license. Although Patmon was afforded ample opportunity by his employer to establish his fitness for the position, he failed to do so.

Patmon and a white employee filed grievances against the company, which grievances were processed by the local union up to the arbitration stage, when the union worked out a procedure with the employer whereby both employees could take a written test, conducted by an independent electrical contractor, to establish their qualification for the position of maintenance electrician. This electrical contractor was also an electrical instructor for the Parma Adult Education Program. The white employee took the test and failed. Patmon, however, declined to take the test, stating that prior to his refusal—

. . . [H]e was denied the opportunity to make photocopies of the test and his answer sheet; and that he refused the test for fear that the test would not be an unbiased and fairly administered test.

Had Patmon taken the test the Court would have had opportunity to pass upon any question whether the test was biased or unfairly administered. He made no showing that the questions in the test taken by the white employee were biased, or that the test was unfairly conducted. But of more importance is the fact that any issue of Patmon's fitness for the position could have been determined if he had taken the test.

It is clear from uncontroverted evidence that Patmon was not promoted to the job of maintenance electrician because he did not possess the requisite qualifications. He had no experience in that field.

■ In enacting Title VII of the Civil Rights Act of 1964 Congress never intended to guarantee a job to every person irrespective of his qualifications. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).[1]

Section 703(h) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 sanctions fairly conducted tests.

Rule 56 of the Federal Rules of Civil Procedure provides in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth

---

1. In the District Court Patmon claimed violations of §§ 1981, 1985 and 2000e of 42 U.S.C. In this Court he now relies only on § 1981. He did not file any claim with EEOC, nor did he pursue his administrative reme-dies provided by the union's constitution as a condition precedent to this action. We are deciding this case on its merits, irrespective of Patmon's failure to pursue such remedies.

specific facts showing that there is a genuine issue for trial.

■ Patmon failed to meet the evidence offered against him by failing to set forth *specific facts* showing that there is a genuine issue for trial. The conclusory allegations in his amended complaint and in his affidavit are insufficient to rebut the evidence offered by the defendants.

The claim against the unions is frivolous. There was not one iota of evidence to prove conspiracy, either against Patmon or against a class of persons. O'Neill v. Grayson County War Memorial Hosp., 472 F.2d 1140 (6th Cir. 1973).

There was no proof of bad faith on the part of the unions, which proof is necessary in order to establish a breach of their duty to represent fairly their members. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

We have held that an action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith. Dill v. Greyhound Corp., 435 F.2d 231 (6th Cir. 1970); Balowski v. International Union, U.A.W., 372 F.2d 829 (6th Cir. 1967). No such showing was made by Patmon.

■ In the present case the union did process Patmon's grievance and worked out a procedure whereby Patmon and another employee were afforded opportunity to establish their qualifications for the job, but Patmon declined to take the test.

Affirmed.

EDWARDS, Circuit Judge (dissenting).

Respectfully I submit that this case should not have been disposed of on defendants' motions for summary judgment.

This record shows that appellant stated in affidavit form:

"Affiant says that he has been told by members of defendant union, U.A. W. Local 346, as well as by its officers, that affiant's attempts at a pro-

motion to Class A or Class B Electrician would be futile because affiant is a member of the Negro race, and neither said union nor defendant, Van Dorn Company, wants to employ a Negro at this or any other skilled trade."

It also shows that no Negro was employed as an Electrician "B" at defendant company:

*Interrogatory 8.* The name, address, and badge number of each and every person of the Negro race who held one of the job classifications named in Interrogatory 6 above ['Electrician Leader-Maintenance,' 'Electrician "A"-Maintenance,' 'Electrician "B"-Maintenance'], the name of said job and the inclusive dates of same.

"Answer: None."

It also shows that no one had been asked to take a written examination for promotion to the electrician's classification prior to appellant's disputed application.

While these facts do not establish appellant's entitlement to the job he seeks, they are sufficient for the purpose of deciding that his suit should not be dismissed on motion prior to trial.

I would reverse for hearing.