Stanford W. ASCHERMAN, M.D., Plaintiff-Appellant,

v.

PRESBYTERIAN HOSPITAL OF PACIFIC MEDICAL CENTER, INC., aka Presbyterian Medical Center, and Pacific Medical Center, aka Presbyterian Hospital of Pacific Medical Center, Defendants-Appellees.

No. 74–1105.

United States Court of Appeals, Ninth Circuit.

Dec. 10, 1974.

---

**3.** *Cf.* Gill v. United States, 429 F.2d 1072, syl. 11 (5th Cir. 1970).

Brian McCarthy (argued), San Francisco, Cal., for plaintiff-appellant.

Herbert I. Pierce, III (argued), of Crosby, Heafy, Roach & May, Oakland, Cal., for defendants-appellees.

OPINION

Before DUNIWAY, INGRAHAM * and WALLACE, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal presents the question whether a private hospital's receipt of federal funds under the Hill-Burton Act,[1] coupled with federal and state tax exemptions, constitutes *state action* sufficient to confer jurisdiction on this court under 42 U.S.C. § 1983. The district court concluded that the mere receipt of federal funds for construction of the facilities, even when coupled with the asserted tax exemptions, was an insufficient connection with the State of California or the federal government to transform the conduct of a purely private hospital into action of the state and dismissed the complaint for want of state action. We affirm.

Appellant Stanford W. Ascherman is a medical doctor who was a member of the staff at Callison Memorial Hospital. After transferring all of its liabilities and assets to the appellee, Presbyterian Hospital, Callison was closed, terminating appellant Ascherman's staff privileges. It was suggested that Ascherman apply for staff privileges at Presbyterian Hospital, and he did so, but his application was denied. Ascherman then brought this action, contending that his staff privileges were arbitrarily and capriciously terminated in violation of his right to due process.

Only when the state becomes "to some significant extent" involved in the conduct of the affairs of a private institution can that conduct be classified as state action and thus run afoul of the Fourteenth Amendment. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In making the determination whether the actions of the private institution are so related to the state, the courts in recent years have been confronted with the question whether receipt of federal funding can transform private conduct into conduct by the state. In Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), a black physician charged the Cone Hospital with racial discrimination, alleging that this discrimination violated the Fourteenth Amendment because the hospital received funds under the Hill-Burton Act. Concluding that the hospital's exclusion of black patients and doctors was indeed state action, the Simkins court noted that not only was the hospital receiving federal funding under the Hill-Burton Act, but that the state regulations through which the federal monies were funneled specifically encouraged a policy of racial segregation. In the court's view, the federal funding, coupled with the state's regulatory scheme, was a sufficient connection with the state to transform the private action of the hospital into the action of the state.[2]

---

* The Honorable Joe McDonald Ingraham, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. 42 U.S.C. § 291 (1970).

2. Although the court in *Simkins* was concerned specifically with the racially discriminatory practices of the Cone Hospital, the policy of *Simkins* has been expanded to include other questions besides just race. Sams v. Ohio Valley General Hospital Ass'n, 413 F.2d 826 (4th Cir. 1969); *see* Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964).

More recent decisions have defined clearly the substantial relationship between the hospital and the state in *Simkins*. By promulgating a regulatory scheme that encouraged the exclusion of blacks from the hospital, the State of North Carolina was intimately involved in the very conduct of which the plaintiff complained. Bond v. Dentzer, 494 F.2d 302 (2nd Cir. 1974); Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973); Ward v. St. Anthony Hospital, 476 F.2d 671 (10th Cir. 1973); Powe v. Miles, 407 F.2d 73 (2nd Cir. 1968). See generally, H. Friendly,[3] The Dartmouth College Case and the Public-Private Penumbra, 12 Texas L.Q. 141. The direct connection between the state and the violation of plaintiff's civil rights was enough to convert the action of the private institution into the action of the state.

■ Mindful of this need for a connection between the state's involvement and the plaintiff's deprivation, we do not think that under the particular facts of this case the appellant has established state action. The mere receipt of Hill-Burton funds, even coupled with the alleged tax exemptions, is not a sufficient connection between the state and the private activity of which appellant complains to make out state action. The appellant cites us to no regulation, and our independent research reveals none, that authorizes the State of California or the federal government to participate in the appointment of medical doctors to the staff of Presbyterian Hospital. Since there is no state action, the termination of appellant's staff privileges need not conform to the constitutional commands of the Fourteenth Amendment.

Affirmed.

DUNIWAY, Circuit Judge (concurring):

I concur, but add some observations of my own.

Presbyterian Hospital is "private." It is not owned or operated by the State of California or any of its political subdivisions. No agency of the state selects or is represented on its governing board. Thus several of the cases in which the receipt of Hill-Burton funds or the grant by the state of tax exemption, or both, are mentioned are not in point. See, e. g.: O'Neill v. Grayson County War Memorial Hospital, 6 Cir., 1973, 472 F.2d 1140, 1142–1143; Chiaffitelli v. Dettmer Hospital, Inc., 6 Cir., 1971, 437 F.2d 429; Sosa v. Board of Managers of Val Verde Memorial Hospital, 5 Cir., 1971, 437 F.2d 173, 174; Foster v. Mobile County Hospital Board, 5 Cir., 1968, 398 F.2d 227, 230; Meredith v. Allen County War Memorial Hospital Commission, 6 Cir., 1968, 397 F.2d 33, 35.

Appellant has not shown that there is any California statute or regulation dealing with the procedure or qualifications for staffing the Presbyterian Hospital with doctors. All that is shown is that the hospital's receipt of substantial Hill-Burton funds does subject certain of its operations to regulation by the state, and that it is exempt from state taxes. Presumably, although we need not so decide, if the hospital took some action under applicable state regulations that action would be "state action." Our question, then, is narrow: whether other actions by the hospital, not regulated by the state, are "state action" merely because the hospital has received Hill-Burton funds, is tax exempt, and is partially regulated by the state. The answer to this question is "no."

There are many "private" charitable organizations that receive subventions of various kinds from the state or its political subdivisions. I think that it would be most unfortunate to adopt a rule that receipt of such subventions automatically

---

3. Judge Friendly also authored the Powe v. Miles case, *supra*.

transforms everything that these organizations do into "state action." The proposition could produce startling results. For example, if a private tax exempt university received state moneys to build and used them to build a library, would that mean that the librarian's action in ejecting a noisy student from that library is "state action"? I cannot believe that the state action notion goes so far.

The weight of authority supports our holding that state action is not involved here. The following cases are directly in point: Jackson v. Norton-Children's Hospitals, Inc., 6 Cir., 1973, 487 F.2d 502; Ward v. St. Anthony Hospital, 10 Cir., 1973, 476 F.2d 671, 675. These cases involve staff privileges of doctors. Also in point are Place v. Shepherd, 6 Cir., 1971, 446 F.2d 1239, 1245, involving a nurse, and Doe v. Bellin Memorial Hospital, 7 Cir., 1973, 479 F.2d 756, 761, involving a hospital rule about abortions.

Closely in point are cases dealing with other private charitable tax exempt corporations: Blackburn v. Fisk University, 6 Cir., 1971, 443 F.2d 121; Powe v. Miles, 2 Cir., 1968, 407 F.2d 73, 81; Bright v. Isenbarger, 7 Cir., 1971, 445 F.2d 412; Browns v. Mitchell, 10 Cir., 1969, 409 F.2d 593, 595–596. What I believe to be the correct rule is stated by Judge Friendly in Powe v. Miles, *supra*, 407 F.2d at 81: "[T]he state must be involved not simply with some activity of the institution . . . but with the activity that caused the injury." No such involvement is shown here.

Appellant relies primarily upon a line of decisions of the Fourth Circuit, some of which, in my view, go too far in finding "state action" by a hospital because of its receipt of Hill-Burton funds. The leading case, Simkins v. Moses H. Cone Memorial Hospital, 4 Cir., 1963, 323 F.2d 959, is readily distinguishable because there the state, in applying for the funds, took advantage of a "separate but equal" provision of the Hill-Burton Act. As a result, the hospitals receiving the funds discriminated against blacks. Eaton v. Grubbs, 4 Cir., 1964, 329 F.2d 710; and Smith v. Hampton Training School for Nurses, 4 Cir., 1966, 360 F.2d 577, also involved racial discrimination. I think it fair to say that federal courts, rightly or wrongly, are more likely to find state action where race discrimination is involved than in due process types of cases, like the case at bar. However, the Fourth Circuit has gone much further, and has found, in substance, that acceptance of Hill-Burton funds has transmogrified the accepting hospital in all of its operations into a public institution. Sams v. Ohio Valley General Hospital Ass'n, 4 Cir., 1969, 413 F.2d 826; Christhilf v. Annapolis Emergency Hospital, Inc., 4 Cir., 1974, 496 F.2d 174. These cases, I think, are wrong, and we are not following them here.