**NEW HAMPSHIRE PODIATRIC MEDICAL ASSOCIATION**

**v.**

**NEW HAMPSHIRE HOSPITAL ASSOCIATION; New Hampshire Medical Association; Elliot Hospital; Catholic Medical Center; Concord Hospital.**

**Civ. No. 89–471–D.**

United States District Court,
D. New Hampshire.

April 26, 1990.

Sakellarios & Associates by Jean–Claude Sakellarios, Manchester, N.H., for plaintiff.

Wadleigh, Starr, Peters, Dunn & Chiesa by John E. Friberg, Manchester, N.H., for Concord Hosp.

Rath, Young, Pignatelli & Oyer by Eve H. Oyer and Ann McLane Kuster, Concord, N.H., for New Hampshire Hosp. Ass'n.

Sheehan, Phinney, Bass & Green, P.A. by Jon S. Richardson and Thomas J. Flygare, and McDonough & O'Shaughnessy by Robert G. Whaland, Manchester, N.H., for Elliot Hosp.

Craig & Wenners, P.A. by Vincent A. Wenners, Jr., Manchester, N.H., for Catholic Medical Center.

Sulloway, Hollis & Soden by Michael P. Lehman and Robert M. Larsen, Concord, N.H., for New Hampshire Medical Ass'n.

Yakovakis, McDonough & Lindh by James S. Yakovakis, Manchester, N.H., for Catholic Medical Center.

## ORDER

DEVINE, Chief Judge.

In this civil action, plaintiff New Hampshire Podiatric Medical Association alleges that licensed podiatrists of New Hampshire have been unlawfully denied hospital privileges in violation of the United States Constitution and the New Hampshire Constitution, 42 U.S.C. §§ 1983, 1985(2), (3), New Hampshire's antitrust statute, and New Hampshire common law.

Specifically, plaintiff contends that licensed podiatrists have been denied the opportunity to treat patients and perform surgery at defendant hospitals. After attempts to gain hospital staff status were continuously rejected because of allegedly discriminatory policies and practices, plaintiff petitioned the New Hampshire Legislature to mandate that discrimination against podiatrists was unlawful. The defendant professional associations demonstrated strong opposition to this proposed legislation, N.H. House of Rep. Bill 417. The bill was defeated in 1987. Consequently, plain-

tiff commenced this lawsuit on behalf of its members.

Presently before the court are defendants' motions to dismiss. In reviewing a motion to dismiss under Rule 12(b)(6), Fed. R.Civ.P., the court must accept the allegations in the complaint as true, *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987), but it need not give weight to "bald assertions or unsupported conclusions." *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

## I. Section 1983

Under section 1983, a plaintiff must allege the deprivation of a right secured by federal law and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (citations omitted). As summarized by plaintiff:

> The gravamen of the Plaintiff's Complaint is that licensed New Hampshire Podiatrists, as a class, have been denied the hospital privileges necessary to the practice of their profession regardless of their individual qualifications, skill and experience by the irrational, discriminatory and unfair practices and policies of the Defendants, who exert influence throughout the State and control hospital services in the greater Manchester and Concord areas, a significant sector of the New Hampshire medical services system. As a result, Podiatrists attempting to practice in New Hampshire have been injured and will continue to be injured absent the relief requested in this matter by way of deprivation of liberty and property, unfair trade practices, damage to professional reputations, and interference in advantageous business relationships.

Memorandum in Support of the Plaintiff's Objection to the Defendants' Motions to Dismiss at 8. Defendants argue that the complaint fails to allege sufficient facts to constitute state action and that podiatrists are not a constitutionally protected class. The court agrees.

### A. Color of State Law

To sustain its section 1983 claim, plaintiff argues that

> [t]he State failed to pass proposed legislation which would have outlawed, by statute, discrimination against Podiatrists, an act in keeping with the State and Federal Constitutional guarantees of equal protection and due process. Submission of this legislation certainly put the State on notice of the irrational, class based discrimination suffered by Podiatrists in violation of their civil rights.
>
> The State's failure to act, in the face of Constitutional mandate, may itself be seen as a State action, serving to throw the authority of the state behind the discriminatory practices and policies of the Defendants and evincing tacit state approval of their challenged actions such that the Defendants are acting under color of state law.

Memorandum in Support of the Plaintiff's Objection to the Defendants' Motions to Dismiss at 16.

In *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Supreme Court identified three factors guiding the determination of whether an ostensibly private entity's conduct constitutes "state action" for purposes of section 1983: (1) " 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself' [quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345] at 351[, 95 S.Ct. 449, at 453, 42 L.Ed.2d 477 (1974) ]"; (2) the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"; or (3) "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.' [quoting *Jackson, id.* at 353, 95 S.Ct. at 454]." *Blum v. Yaretsky, supra,* 457 U.S. at 1004–05, 102 S.Ct. at 2785–86. Here, plaintiff's contention that the state legislature tacitly approved of defendants' discrimination is unpersuasive. Mere inaction or acquiescence by the government in private

wrongful conduct will not convert a private right of action into government action. *Flagg Bros. v. Brooks,* 436 U.S. 149, 162, 98 S.Ct. 1729, 1736, 56 L.Ed.2d 185 (1978); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974); *Fletcher v. Rhode Island Hosp. Trust Nat'l Bank,* 496 F.2d 927 (1st Cir.), *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974). Neither the defendant hospitals nor the defendant associations can be shown to stand in the shoes of the state or to willfully participate in joint activity with the state. Moreover, defendants' lobbying in opposition to proposed legislation does not constitute unlawful state action since lobbying is a recognized exercise of freedom of speech and the right of petition guaranteed by the First Amendment. *Sims v. Tinney,* 482 F.Supp. 794 (D.S.C.), *aff'd,* 615 F.2d 1358 (4th Cir.1977).

Reading the complaint liberally, the Court also rejects any assertions of state action premised on the fact that defendant hospitals receive Hill–Burton Act Medicare, Medicaid or state funds, *Mendez v. Belton,* 739 F.2d 15 (1st Cir.1984); *Sarin v. Samaritan Hosp. Center,* 813 F.2d 755 (6th Cir.1987) (mere fact that state regulates the facilities and standard of care of private hospitals or offers them financial support does not make the acts of these hospitals acts of the state), or that defendants constitute a localized geographic health care monopoly, *Loh–Seng Yo v. Cibola Gen. Hosp.,* 706 F.2d 306 (10th Cir.1983). Plaintiff therefore has failed to show any action "under color of state law".

## B. *Constitutional Claim*

■ Even if plaintiff had sufficiently satisfied the "color of state law" requirement of a section 1983 claim, its constitutional claims have yet to be recognized by our courts and must be rejected.

Plaintiff contends that podiatrists as a class have been intentionally and "systematically" discriminated against because defendants "control the market of health care delivery in the area served and clearly intend to exclude certain disciplines, including podiatrists, from meaningful partic-

ipation in violation of the rights of plaintiffs." Complaint ¶ 63. The rights allegedly violated are podiatrists' "liberty right" to practice their profession and their equal protection right to the same hospital privileges and immunities as licensed physicians.

Essentially, plaintiff makes two different equal protection-type arguments: (1) that podiatrists are an invidiously discriminated class and (2) that podiatrists and licensed physicians are similarly situated and "there is ... no rational basis for a distinction between podiatrists and orthopedic surgeons or general surgeons or even osteopaths." Complaint ¶ 51.

The first argument is meritless. Although the Supreme Court has recognized an individual's right to work in the occupation or vocation of one's choice, *see Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *see also* Tribe, American Constitutional Law § 15–14 (1978) (recognized as a due process right), such a right has never been placed on equal footing as fundamental personal rights or suspect distinctions such as race, religion, or alienage. No invidious class-based discrimination claim can be maintained here.

In cases in which exclusion from professional or occupational opportunities has been challenged on equal protection grounds by podiatrists, courts have consistently found a rational basis for the state's decision to classify different medically related professionals differently and have consequently rejected plaintiff's equal protection claims. *See, e.g., Silver v. Baggiano,* 804 F.2d 1211, 1218 (11th Cir.1986) (claim for Medicaid reimbursement); *Shaw v. Hospital Auth. of Cobb County,* 507 F.2d 625, 627 (5th Cir.1975) (claim for hospital staff privileges); *Foreman v. Ambach,* 525 F.Supp. 722, 725–26 (S.D.N.Y. 1981) (claim to be treated with same disciplinary procedures); *Goodfrey v. Massachusetts Medical Services,* 359 Mass. 610, 270 N.E.2d 804 (1971) (claim for equal right to participate in low-cost medical services insurance plan); *see also Hayman v. Gal-*

**452**

*veston,* 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927); *Illinois Psychological Ass'n v. Falk,* 818 F.2d 1337, 1341 (7th Cir.1987); *Stern v. Tarrant County Hosp.,* 778 F.2d 1052 (5th Cir.1985), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986); *Brandwein v. California Bd. of Osteopathic Examiners,* 708 F.2d 1466 (9th Cir. 1983).

Following the precedent set by other circuits, this Court refuses to classify podiatrists and licensed physicians as "similarly situated" for purposes of finding that plaintiff's members are entitled to equal staff privileges at hospitals and equal privileges and treatment by professional associations.

*II. Section 1985(2), (3) Claim*

 Plaintiff claims that defendants conspired with class-based invidious discriminatory animus to deprive the class of podiatrists their equal protection and due process rights in violation of 42 U.S.C. § 1985(3). All defendants move to dismiss this claim, citing this Court's decision in *Addante v. Joseph,* No. 82–390–D, slip op. (May 16, 1983). In *Addante,* a licensed podiatrist whose hospital staff and association privileges were terminated sued the hospital, its board of directors, and its admissions committee on behalf of himself and other podiatrists for violations of 42 U.S.C. §§ 1983, 1985, 1986, and the Sherman Act. In its discussion of Addante's section 1985(2) and (3) claims, *id.* at 11–16, this Court held that "[p]odiatry is not the sort of classification that entitles a member to state a claim under section 1985(3)." *Id.* at 14. *See also Feldman v. Jackson Memorial Hosp.,* 509 F.Supp. 815 (S.D.Fla. 1981), *aff'd without opinion,* 752 F.2d 647 (5th Cir.), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985). Therefore, plaintiff's section 1985 claims must also be dismissed.

*III. Pendent State Claims*

In Counts IV–VII of the complaint, plaintiff also alleges several state claims sounding in defamation, negligence, intentional interference with the business and medical relationships between podiatrists and their patients, and violation of New Hampshire's anti-competitive restraint of trade statute, RSA ch. 356. Having disposed of the federal claims in this action, in accordance with general federal jurisprudential practice, the Court herewith dismisses the pendent state law causes of action without prejudice. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Massachusetts Universalist Convention v. Hildreth & Rogers Co.,* 183 F.2d 497 (1st Cir.1950); *Thompson v. Sanborn,* 568 F.Supp. 385, 391 (D.N.H.1983).

CONCLUSION

For the reasons stated herein, defendants' motions to dismiss (documents 13, 14, 15, 16, and 17) are granted.

SO ORDERED.